IN THE UNITED SATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY WORTHINGTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 11 C 28 |
| ) | |
| WHOLE FOODS MARKET GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Timothy Worthington has sued his former employer, Whole Foods Market Group, Inc. under the Family Medical Leave Act (FMLA) and Illinois law. Whole Foods has moved for summary judgment. Following the filing of that motion, the case was transferred to the undersigned judge from the docket of another judge who retired. The Court heard oral argument on the motion on January 3, 2013.

### Facts

The Court takes the following facts from the parties' statements of uncontested facts and the materials they have submitted in support of their respective positions. In deciding on a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Ins. Co.,* 629 F.3d 653, 656 (7th Cir. 2010).

Worthington worked for Whole Foods starting in 2003 as a "grocery team leader," a supervisory position within a grocery store. In November 2005, while working at Whole Foods' Evanston store, he suffered a workplace injury to his wrist. Worthington

reported his injury at the time. In July 2007, Worthington was promoted to "associate team leader," the equivalent of an assistant store manager, and he was transferred to the Whole Foods store in the Sauganash neighborhood of Chicago.

Worthington underwent a job review in January 2008. He was found to exceed requirements in about half of the categories assessed. Store team leader (manager) David Baffa told Worthington that he was doing a great job, and Worthington received a pay raise after the review.

In April 2008, Worthington underwent surgery on the same wrist that he had injured at the Evanston store in 2005. He filed a worker's compensation claim in July 2008, alleging that the surgery was the result of the earlier workplace injury. When David Baffa, the team leader (manager) of the Sauganash store, learned about Worthington's claim, he asked Worthington why he had filed a claim. Worthington testified during his deposition that Baffa said he was unhappy about Worthington's filing of the claim.

In January 2010, Worthington received a rating of "consistently meets standards" in all categories except one in which he received a rating of "exceeds standards." His evaluation, conducted by Baffa, also included a number of goals Worthington needed to meet in the upcoming year and some areas where he was expected to improve. Worthington received a pay raise after this review. He also received bonuses in January 2010, which Baffa approved, and in April 2010, approved by Jason Aragon, Baffa's successor as store team leader.

Also around January 2010, Worthington told Baffa that he was interested in applying for a team leader position. According to Worthington, Baffa noted that

2

Worthington had the oldest worker's compensation claim in the region and that this would not look good to the regional vice presidents, who would have to approve Worthington's promotion. Baffa also told Worthington that he did not have other department managers' support to be a team leader. Baffa advised Worthington that he would not support Worthington for a team leader position. Worthington ended up not applying.

In February 2010, Jason Aragon replaced Baffa as team leader of the Sauganash store. About the same time, Tom Marciniak became executive operations coordinator for Whole Foods' Midwest region. As such, he was Aragon's supervisor. Aragon has testified that during the spring of 2010, he expressed constructive criticism to Worthington about his performance.

On May 30, 2010, while Worthington was off duty, there was a power outage that affected the Sauganash store. Store team leader Aragon, who was on vacation, learned of the power outage and called Worthington to advise him and later called again and directed Worthington to go to the store to assess and deal with the situation. Worthington arrived at the store about 10:45 p.m., about one hour after the power went out. Worthington was the Whole Foods representative on site in charge of the store's effort to deal with the effects of the power outage. This included making sure that necessary personnel were present and making arrangements to store perishable food so that it would not spoil.

Electrical power at the Sauganash store was out for a total of about eight hours. Some food spoilage occurred. Worthington's superiors at Whole Foods were dissatisfied with how he handled the power outage and in particular believed that he

had not taken appropriate steps to avoid unnecessary spoilage of food.

About a month after the power outage, on June 28, 2010, Worthington was given a "final warning" of unsatisfactory work and was placed on a ninety-day "action plan" that outlined over thirty directions or guidelines. Worthington was told that he was to meet every two weeks with Aragon to go over his progress on the plan. He was not, however, given any percentage or quota of the items he had to complete on a biweekly basis. Aragon and Marciniak were both aware that not all of the items on the action plan could be completed within two weeks; a number of them involved long-term projects.

Worthington had his first meeting with Aragon concerning the action plan on July 13, 2010. Worthington described what he had done in the intervening period to meet the requirements of the action plan. He estimated that he had completed thirty to forty percent of the items on the plan. Aragon testified during his deposition that he was disappointed in Worthington's progress and in his report. At the meeting, however, Aragon did not express any dissatisfaction with Worthington's performance or progress. Aragon left Worthington with the impression that he was satisfied with Worthington's progress.

Later in the day of his July 13 meeting with Aragon, Worthington was in an automobile accident and was injured. He asked for and was placed on FMLA leave. Aragon says that he learned of Worthington's auto accident and injury a day or two later, on July 14 or 15.

Ten days later, on July 23, 2010, Worthington settled the worker's compensation claim that he had filed in 2008. Worthington has offered no evidence from which a

reasonable fact finder could find that either Aragon or Marciniak became aware of the settlement at any time prior to Worthington's termination.

On August 23, 2010, Worthington's doctors released him to return to work. He returned to work on August 25. On that date, he was told that he was terminated. Aragon made the decision to terminate Worthington. He states that he made this decision based on Worthington's lack of progress and follow-up during the first two weeks of his action plan. Marciniak approved Aragon's decision. There is no evidence or contention that Baffa, Worthington's previous supervisor, had anything to do with the termination decision.

Aragon has testified that he made the decision to terminate Worthington immediately after their July 13 meeting regarding Worthington's progress on the action plan. However, there is no contemporaneous documentation – for example, no notes, no interoffice memo, no e-mail, no notation in Worthington's personnel file – that corroborates this testimony. Indeed, although Aragon took extensive notes of his July 13 meeting with Worthington, but the notes do not reflect a decision to terminate Worthington. In addition, Aragon spoke with Worthington while he was on FMLA leave and did not suggest that he felt Worthington had failed to perform under the action plan or that he had made a decision to terminate Worthington.

Aragon testified that he called Marciniak later on the day of his meeting with Worthington about the action plan and told Marciniak that due to Worthington's lack of progress he could no longer trust Worthington in the role of associate store team leader. Marciniak essentially confirms this account. There is no contemporaneous documentation of this communication either. Aragon testified that he "ask[ed]

[Marciniak] that he be allowed to terminate" Worthington, Aragon Dep. 131, and his testimony, fairly read, reflects that he needed Marciniak's okay. *Id.* 231-32. Aragon stated that Marciniak did not immediately confirm the decision but rather asked to see Aragon's notes of the meeting, so Aragon e-mailed them to Marciniak. Marciniak says that he communicated to human resources that same evening that he and Aragon had decided to terminate Worthington. The first documentation of the termination decision, however, is dated about five weeks later, on August 20, just before he was to return to work.

Both Aragon and Marciniak have testified that they were unaware of Worthington's accident or injury before the date they claim they decided to terminate him. Again, however, there is no contemporaneous documentation reflecting the date they claim they made the decision to terminate. Both Aragon and Marciniak were aware of Worthington's accident and his leave before they advised him of the termination.

According to Whole Foods, Aragon and Marciniak agreed that they would tell Worthington of his termination once he returned from his FMLA leave. The termination was communicated to Worthington on August 25, his first day back to work.

Worthington contends that both Aragon and Marciniak were aware of his worker's compensation claim. With regard to Aragon, Worthington contends that as a team leader, Aragon had access to reports regarding the status of employee worker compensation claims and received a monthly report including information about such claims. Worthington also contends that Aragon's quarterly bonuses were affected by the number of worker's compensation claims filed relating to his store. But Whole Foods has offered evidence reflecting that the reports Aragon received would have

6

covered only claims made with respect to injuries at the Sauganash store, and Worthington (whose claims concerned injuries at the Evanston store) has offered no contrary evidence. No reasonable juror could find based on the evidence presented that Aragon was aware of the worker's compensation claim.

Worthington has offered evidence that Marciniak was aware of the worker's compensation claim. Specifically, he states that on June 9, 2010, he told Marciniak and a human resources supervisor about Baffa's negative comments regarding the claim. *See* Worthington Dep. at 123. As indicated earlier, however, Worthington has offered no evidence that either Aragon or Marciniak was aware of the July 2010 settlement of the worker's compensation claim at any time before Worthington's termination.

## Discussion

Worthington has asserted three claims. Count 1 is a claim that Whole Foods terminated him in retaliation for exercising his worker's compensation rights. Count 2 is a claim that Whole Foods violated the Family Medical Leave Act (FMLA) by failing to restore Worthington to his former position when he returned from leave. Count 3 is a claim that Whole Foods violated the FMLA by terminating Worthington for taking FMLA leave.

Whole Foods has moved for summary judgment on all of Worthington's claims. Summary judgment is appropriate when the evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 898 (7th Cir. 2011). In deciding a motion for summary judgment, a court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable

7

inferences in that party's favor." *Trinity Homes LLC,* 629 F.3d at 656. Summary judgment is proper "if no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.,* 692 F.3d 833, 838 (7th Cir. 2012) (internal quotation marks omitted).

1.      **Worker's compensation retaliation claim (Count 1)**

Illinois law recognizes a cause of action when an employee is terminated because of his actual or anticipated exercise of worker's compensation rights. To prevail on such a claim, the plaintiff must prove that he was an employee; he exercised a right granted by the Worker's Compensation Act; he was discharged; and this was causally related to his exercise of his rights under the Act. *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012) (citing *Clemons v. Mech. Devices Co.,* 184 Ill. 2d 328, 336, 704 N.E.2d 403, 406 (1998)).

The parties dispute whether the settlement, as distinguished from the filing, of a worker's compensation claim is the sort of protected right that gives rise to a claim of retaliatory discharge. The Court need not resolve that question, however, because Worthington cannot sustain his claim even if the settlement qualifies as a protected act.

Worthington's causation argument rests entirely on suspicious timing, specifically the short interval between his settlement of the worker's compensation claim and his termination. Whole Foods argues that suspicious timing without more is insufficient, *see Feldman v. Am. Memorial Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999), but the Court does not need to go that far in this case. The timing is arguably suspicious only if Aragon or Marciniak knew of the worker's compensation settlement. *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 779 (7th Cir. 2012) (in a case involving retaliation for filing a

claim, evidence that those responsible for the termination knew that the employee intended to file or had filed a worker's compensation claim is essential). But Worthington has offered no evidence from which a reasonable jury could find that either of them was aware of the settlement. Thus there is no "suspicious timing" based on the settlement.

There is evidence that Marciniak (though not Aragon) was aware of Worthington's *filing* of a worker's compensation claim. But Worthington filed the claim two years earlier, in 2008. A two-year interval is not even arguably suspicious. "The mere fact that plaintiff's worker's compensation claim preceded [his] termination does nothing to prove that [his] workers' compensation claim caused [his] termination." *Bilow v. Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001). In *Bilow*, the court cited with approval an age discrimination case in which it had determined a three-month interval could not establish a causal connection. *Id.* (citing *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). The much longer interval in this case plainly does not allow Worthington to carry his burden of proving causation.

Worthington also argues that Baffa's negative comments about his worker's compensation claim supplies the additional element needed to permit a reasonable jury to find the requisite causal link. The Court disagrees. There is no evidence that Baffa had any input in the decision. Thus his comment cannot contribute to proof of causation. *See Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 850 (7th Cir. 2010) (Title VII case; "stray" remarks insufficient to establish motivation unless they are made by the decision maker).

9

For these reasons, Whole Foods is entitled to summary judgment on Worthington's worker's compensation retaliation claim.

**2.      FMLA interference claim (Count 2)**

To prevail on his FMLA interference claim (Count 2), Worthington must prove that he was eligible for the FMLA's protections; Whole Foods was covered by the statute; he was entitled to take leave; he provided sufficient notice of his intent to do so; and Whole Foods denied him an FMLA benefit to which he was entitled, in this case, return to his former position or an equivalent. *See, e.g., Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Whole Foods argues that Worthington cannot prove the last of these elements.

The FMLA requires an employer to return an employee who has taken FMLA leave to the same or an equivalent position following his return. 29 U.S.C. § 2614(a)(1). An employer may decline to reinstate an employee, however, if this would confer on him a position to which he would not have been entitled had he not taken FMLA leave. *Id.* § 2614(a)(3)(B); *Kohls v. Beverly Enters. Wisc, Inc.*, 259 F.3d 799, 805 (7th Cir. 2001). In particular, an employee is not entitled to be returned to his former position if he would have been terminated irrespective of whether he took FMLA leave. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008).

Whole Foods argues that the evidence establishes that Aragon and Marciniak decided to terminate Worthington before his need for FMLA leave arose, and for this reason Whole Foods is entitled to summary judgment. *See* Def.'s Mem. at 18. That certainly was the testimony of Aragon and Marciniak. Based upon the evidence presented, however, a reasonable jury could find that they did not make the decision

10

until after learning of Marciniak's July 13 injury and his resulting need or likely need for FMLA leave. Specifically, a reasonable jury could find that Worthington had made adequate progress on his action plan as of his July 13 meeting with Aragon and that Aragon expressed no concerns at the meeting regarding Worthington's progress and in fact communicated that he was pleased. Though Aragon and Marciniak testified that they spoke later that day and agreed to terminate him – just before Aragon learned that Worthington had been injured and required hospitalization – there is no contemporaneous documentation supporting their testimony, and the documentation that exists (Aragon's notes of his meeting with Worthington) does not support that any such decision was made at the time. Based upon all of these factors, a reasonable jury could disbelieve Aragon and Marciniak's contention and could find that they did not make the decision to terminate Worthington until weeks later, nearer to the date of Worthington's anticipated return to work and well after both of them had become aware that he had taken FMLA leave.

For these reasons, Whole Foods is not entitled to summary judgment on Worthington's FMLA interference claim.

### 3. FMLA retaliation claim (Count 3)

An employee may prove an FMLA retaliation claim by direct or indirect proof. The direct method of proof requires evidence that the employee engaged in protected activity, the employer took adverse action against the employee, and there is a causal connection between the two. *See, e.g., Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). The disputed element in this case is causation. A plaintiff may satisfy his burden of causation under the direct method of proof by "constructing a

convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Scruggs v. Carrier Corp.*, 688 F.3d 821, 827 (7th Cir. 2012).

Worthington has offered sufficient evidence of causation to give rise to a genuine factual dispute that requires determination by a jury. This arises from the suspicious timing of the termination as well as the evidence cited in the previous section. The termination decision was communicated to Worthington on the day he returned from FMLA leave, and the only apparent documentation of the decision is dated just a few days earlier, a very short time after the decision makers learned of Worthington's FMLA leave. As discussed in the previous section of this decision, Whole Foods contends that the termination decision was made before Aragon or Marciniak were aware that Worthington had been in an accident and would be asking for leave. But a reasonable jury could find their testimony in this regard to be contrived and, in effect, back-dated so that it would appear the decision was made completely independent of the likelihood of or request for FMLA leave. Whole Foods is not entitled to summary judgment on Worthington's FMLA retaliation claim.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion for summary judgment in part and denies it in part [dkt. no. 73]. Summary judgment is entered in favor of defendant on Count 1. The Court otherwise denies the motion. The case is set for a status hearing on January 29, 2012 at 9:30 a.m. in order to set a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 22, 2013